1
2025 CO 43 The People of the State of Colorado, Petitioner: v. Kelly James Schnorenberg. No. 23SC776Supreme Court of Colorado, En BancJune 23, 2025

         
Certiorari to the Colorado Court of Appeals Court of Appeals
Case No. 19CA223

2

         
Attorneys for Petitioner: Philip J. Weiser, Attorney General,
Trina K. Kissel, Senior Assistant Attorney General &
Assistant Solicitor General Denver, Colorado.

         
Attorneys for Respondent: Law Office of Lynn C. Hartfield,
LLC Lynn C. Hartfield Denver, Colorado.

         
JUSTICE GABRIEL delivered the Opinion of the Court, in which
CHIEF JUSTICE MARQUEZ, JUSTICE BOATRIGHT, JUSTICE HOOD,
JUSTICE HART, JUSTICE SAMOUR, and JUSTICE BERKENKOTTER
joined.

3

         
OPINION

         
GABRIEL JUSTICE.

         ¶1
In this securities fraud case, we granted certiorari to
determine whether the court of appeals division below
misconstrued the law in concluding that the trial court had
reversibly erred by limiting defendant Kelly James
Schnorenberg's testimony, and not giving a
defense-tendered jury instruction, about the advice of
counsel. This question, in turn, requires us to decide
whether the mens rea of "willfully" applies to each
element of securities fraud under subsections 11-51-501(1)(b)
and (c), C.R.S. (2024), of the Colorado Securities Act
("CSA").

         ¶2
We now conclude that the mens rea of "willfully,"
which, for purposes here, is synonymous with
"knowingly," applies to every element under
subsections 11-51-501(1)(b) and (c). Accordingly, to convict
a defendant under subsection 11-51-501(1)(b), the People must
prove, among other things, that the defendant knew that the
false statement or omitted fact at issue was material.
Likewise, under subsection 11-51-501(1)(c), the People must
prove that the defendant knew that their act, practice, or
course of business operated or would operate as a fraud or
deceit on another person. As a result, we further conclude
that Schnorenberg's proffered testimony about the advice
of his counsel was relevant to whether he had the requisite
mens rea and that, therefore, the trial court reversibly
erred in excluding this testimony.

4

         ¶3
Accordingly, we affirm the judgment of the division below and
remand this case for a new trial on the counts at issue.

         I.
Facts and Procedural History

         ¶4
In 2008, Schnorenberg formed KJS Marketing, Inc. to secure
funding and recruit agents for insurance companies. Between
2009 and 2015, KJS solicited over $15 million from
approximately 250 investors. Pursuant to investment
agreements and promissory notes between KJS and these
investors, the investors provided Schnorenberg with funding
with the understanding that they would be repaid at 12%
interest per year.

         ¶5
In soliciting these investments, Schnorenberg did not inform
his investors that the Colorado Division of Securities had
sued him, that he had been permanently enjoined from selling
investments and securities in Colorado, or that he had filed
for bankruptcy five years before forming KJS. He also did not
inform his investors that he had failed to repay prior
investors; his companies had carried large debt loads; civil
judgments had been entered against him and his companies for
unpaid debts, and he had not satisfied those judgments; some
of his companies had failed; and he had failed to provide his
prior investors with quarterly and annual financial
statements for his companies.

         ¶6
Schnorenberg was subsequently charged with, among other
things, twenty-five counts of securities fraud under section
11-51-501. Twenty-four of

5

these counts were premised on materially false statements or
material omissions under subsection 11-51-501(1)(b), and one
was premised on a fraudulent course of business under
subsection 11-51-501(1)(c).

         ¶7
As pertinent here, Schnorenberg planned to defend against
these charges by arguing that he had acted in good faith
reliance on the advice of his securities lawyer, Hank
Schlueter. To this end, Schnorenberg intended to call
Schlueter as a witness, but Schlueter was due to be out of
the country for the duration of Schnorenberg's trial.
Accordingly, Schnorenberg moved for a continuance so that
Schlueter could appear. The trial court, however, denied this
motion, and the case proceeded to trial.

         ¶8
On the first day of trial, Schnorenberg again moved for a
continuance, asserting that he needed Schlueter's
testimony for his defense. The People opposed this motion,
and the trial court denied it.

         ¶9
Trial thus commenced, and Schnorenberg, who testified in his
own defense, sought to testify regarding the advice that
Schlueter had given him. Specifically, on direct examination,
Schnorenberg's defense attorney asked him if he had
consulted with his securities lawyer as to "whether the
bankruptcy or the injunctions were material in that they
needed to be disclosed to anybody." The People objected
on relevance grounds, but the court overruled that objection.
Defense counsel then asked Schnorenberg whether, based on his
conversations

6

with his securities attorney, he believed he was required to
make the foregoing disclosures. The People again objected,
this time on hearsay grounds. Defense counsel responded that
the proffered testimony was being offered solely for its
effect on Schnorenberg as the listener (i.e., not for the
truth of the matter asserted). The court, however, sustained
the People's hearsay objection.

         ¶10
Subsequently, defense counsel proposed a limiting instruction
that would have confirmed that the foregoing proffered
testimony was being offered for "the limited purpose of
showing the effect of the attorney's advice on Mr.
Schnorenberg." The court, however, denied the request
for this limiting instruction, adhering to its original
ruling excluding this testimony on hearsay grounds. As a
result, Schnorenberg could not testify as to the specific
advice that Schleuter had given him. Instead, he was limited
to testifying, in general terms, that he had acted after
obtaining advice from counsel.

         ¶11
Notwithstanding the foregoing restrictions on his evidence,
Schnorenberg requested that the court instruct the jury, as
part of its final charge, that "[i]n determining whether
Mr. Schnorenberg acted willfully, you may consider the
evidence as it relates to good faith reliance on the advice
of counsel." The court, however, refused to give this
proposed instruction, and Schnorenberg was eventually
convicted on the twenty-five counts on which he was tried.

7

         ¶12
Schnorenberg then appealed, and a unanimous division of the
court of appeals vacated seven of his convictions as
time-barred, reversed the remaining convictions, and remanded
the case for further proceedings. People v.
Schnorenberg, 2023 COA 82, ¶¶ 1, 6, 541 P.3d
1, 3-4. As to the non-time-barred convictions, which are the
charges now before us, the division concluded that the trial
court had erred in preventing Schnorenberg from testifying as
to the advice that he had received from his securities lawyer
regarding the disclosures that he needed to make to
prospective investors. Id. at ¶ 6, 541 P.3d at
4. In reaching this conclusion, the division observed that a
defendant's good faith reliance on the advice of counsel
could negate the mens rea element of the securities fraud
counts at issue. Id. at ¶¶ 20-22, 541 P.3d
at 6-7. The division further determined that
Schnorenberg's proffered testimony regarding the advice
that he had received from counsel was not hearsay, and,
regarding CRE 403, which the People raised for the first time
on appeal, the division opined that even had a CRE 403
objection been preserved, that rule did not support the
exclusion of such testimony. Id. at ¶¶
27-35, 541 P.3d at 7-9. Accordingly, the division concluded
that the trial court had erred in excluding
Schnorenberg's proffered testimony regarding the advice
of his counsel. Id. at ¶ 35, 541 P.3d at 8-9.

         ¶13
Having so decided, the division proceeded to consider whether
the trial court had also erred in declining to instruct the
jury that good faith reliance on the

8

advice of counsel was relevant to whether Schnorenberg had
acted willfully. Id. at ¶ 36, 541 P.3d at 9.
The division concluded that it had and that the foregoing
errors were not harmless and required reversal. Id.
at ¶¶ 36-39, 541 P.3d at 9.

         ¶14
The People then petitioned this court for a writ of
certiorari, and we granted their petition.

         II.
Analysis

         ¶15
We begin by setting forth the applicable standard of review.
We then address whether the trial court erred in excluding
Schnorenberg's testimony about the advice of his counsel
and conclude that it did and that this error was not
harmless. Finally, because the issue is likely to arise again
on remand, we address whether Schnorenberg is entitled to a
jury instruction advising the jurors that, in determining
whether Schnorenberg acted willfully, they may consider good
faith reliance on the advice of counsel.

         A.
Standard of Review

         ¶16
We review a trial court's ruling on the admissibility of
evidence for an abuse of discretion, Bly v. Story,
241 P.3d 529, 535 (Colo. 2010), but we review legal questions
de novo, Clark v. People, 2024 CO 55, ¶ 65, 553
P.3d 215, 230. A trial court abuses its discretion when its
ruling is "manifestly arbitrary, unreasonable, or
unfair, or based on a misapprehension of the law."
Cath. Health Initiatives Colo. v. Earl Swensson Assocs.,
Inc., 2017 CO 94, ¶ 8, 403 P.3d 185, 187.

9

         ¶17
The issue of the admissibility of Schnorenberg's
testimony requires us to determine the elements of securities
fraud under subsections 11-51-501(1)(b) and (c) to which the
mens rea of "willfully" applies. This is a matter
of statutory construction that we review de novo. See
People v. Cross, 127 P.3d 71, 73-74 (Colo. 2006),
abrogated on other grounds by Counterman v.
Colorado, 600 U.S. 66, 77-78 (2023).

         ¶18
Lastly, we review de novo whether a jury instruction
correctly states the law, and we review a trial court's
decision as to whether to give a particular instruction for
an abuse of discretion. Day v. Johnson, 255 P.3d
1064, 1067 (Colo. 2011).

         B.
Advice-of-Counsel Testimony

         ¶19
The People concede that Schnorenberg's testimony
regarding the advice of his counsel was not hearsay, as the
trial court had ruled. The People nonetheless contend that
the trial court did not err in excluding this evidence
because it was not relevant under CRE 401. Specifically, the
People assert that the testimony was not relevant because, in
their view, the good faith reliance on the advice of counsel
is not a defense to the crime of securities fraud. We are not
persuaded.

         ¶20
Relevant evidence is "evidence having any tendency to
make the existence of any fact that is of consequence to the
determination of the action more probable or less probable
than it would be without the evidence." CRE 401. CRE 401
thus

10

encompasses two requirements: materiality and probative
value. Fletcher v. People, 179 P.3d 969, 974 (Colo.
2007). To be material, evidence must relate to a fact of
consequence to the determination of the case. Id.
This, in turn, requires a court to consider the elements of
the offense charged. Id. Evidence is probative if it
has "a tendency to prove the proposition for which it is
offered." Id.

         ¶21
Subsection 11-51-501(1)(b) provides:

It is unlawful for any person, in connection with the offer,
sale, or purchase of any security, directly or indirectly . .
. [t]o make any untrue statement of a material fact or to
omit to state a material fact necessary in order to make the
statements made, in the light of the circumstances under
which they are made, not misleading ....

         ¶22
Subsection 11-51-501(1)(c), in turn, provides, "It is
unlawful for any person, in connection with the offer, sale,
or purchase of any security, directly or indirectly . . .
[t]o engage in any act, practice, or course of business which
operates or would operate as a fraud or deceit upon any
person."

         ¶23
As charged here, the requisite mental state for violations of
subsections 11-51-501(1)(b) and (c) is "willfully."
§ 11-51-603(1), C.R.S. (2024); accord People v.
Riley, 708 P.2d 1359, 1365 (Colo. 1985); People v.
Blair, 579 P.2d 1133, 1137 (Colo. 1978).
"Willfully" is synonymous with
"knowingly," and a person acts willfully or
knowingly with respect to conduct or a circumstance at issue
"when he is aware that his conduct is of such nature or
that such circumstance exists." § 18-1-501(6),
C.R.S. (2024);

11

see also Riley, 708 P.2d at 1365 (noting that the
Colorado Criminal Code equates the culpable states of
"willfully" and "knowingly").

         ¶24
The dispute before us concerns the elements of securities
fraud to which the mens rea of "willfully" applies.
The People contend that it applies only to the acts of making
an untrue statement or omitting facts within the meaning of
subsection 11-51-501(1)(b), or to a defendant's
conducting an act, practice, or course of business under
subsection 11-51-501(1)(c). Schnorenberg responds that
"willfully" also applies to the element of
materiality under subsection 11-51-501(1)(b) and to the
element of fraud or deceit under subsection 11-51-501(1)(c).
Thus, in his view, the People were required to prove that he
knew that his allegedly false statements and omitted
information were material and that he knew that his act,
practice, or course of business was fraudulent or deceitful.
We agree with Schnorenberg.

         ¶25
Section 18-1-503(4), C.R.S. (2024), provides, "When a
statute defining an offense prescribes as an element thereof
a specified culpable mental state, that mental state is
deemed to apply to every element of the offense unless an
intent to limit its application clearly appears." We
perceive no such intent in subsections 11-51-501(1)(b) or
(c). Nor do the People point to language in those provisions
indicating such an intent. Accordingly, we conclude that the
mens rea of "willfully" applies to each element of
the offenses defined by section 11-51-501(1).

12

Thus, to be convicted under subsection 11-51-501(1)(b), the
defendant (1) must have knowingly made an untrue statement of
a material fact or omitted a material fact necessary to make
a statement made, in light of the circumstances under which
it was made, not misleading; and (2) must have known
that the untrue statement or omitted fact was material.
Similarly, to be convicted under subsection 11-51-501(1)(c),
the defendant must have knowingly engaged in an act,
practice, or course of business and must have known
that this conduct would operate as a fraud or deceit on
another person.

         ¶26
The question thus becomes whether, in light of our conclusion
that the mens rea of "willfully" applies to each
element of the offense of securities fraud, a defendant's
reliance on advice of counsel is relevant in a securities
fraud prosecution. We conclude that it is.

         ¶27
As many courts have concluded, the good faith reliance on the
advice of counsel tends to negate a finding that a defendant
had the requisite mens rea for securities fraud. See,
e.g., SEC v. Snyder, 292 Fed.Appx. 391, 406
(5th Cir. 2008) (unpublished opinion); Howard v.
SEC, 376 F.3d 1136, 1147-48, 1147 n.19 (D.C. Cir. 2004);
Bisno v. United States, 299 F.2d 711, 719 (9th Cir.
1961); People v. Hoover, 165 P.3d 784, 792
(Colo.App. 2006). Specifically, in the context of subsection
11-51-501(1)(b), good faith reliance on the advice of counsel
could negate a finding that a defendant knowingly misstated
or omitted a material fact. See People v.
Terranova,

13

563 P.2d 363, 365-67 (Colo.App. 1976); cf. United States
v. Peterson, 101 F.3d 375, 381-82, 381 n.5 (5th Cir.
1996) (affirming the district court's issuance of a jury
instruction that stated, in pertinent part, "To decide
whether such reliance [on the advice of counsel] was in good
faith, you may consider whether the Defendant sought the
advice of a competent attorney concerning the material
fact allegedly omitted or misrepresented"). A fact
is material "if there is a substantial likelihood that a
reasonable investor would consider the matter important in
making an investment decision." Goss v. Clutch
Exch., Inc., 701 P.2d 33, 36 (Colo. 1985).

         ¶28
Accordingly, we conclude that good faith reliance on the
advice of counsel is a relevant consideration for the jury in
evaluating whether a defendant acted willfully with respect
to the materiality requirement of subsection 11-51-501(1)(b).
See Howard, 376 F.3d at 1147. Likewise, a defendant
who relied on counsel's advice that a course of business
was not fraudulent may not have had the requisite mens rea
for conviction under subsection 11-51-501(1)(c) (because they
might not have known that they were defrauding or deceiving
someone). See Hoover, 165 P.3d at 792 ("Advice
of counsel is relevant to the fraudulent practices aspect of
a securities charge if a defendant can show that he or she
relied in good faith on advice that his or her actions were
legal, to show lack of scienter."); see also
Snyder, 292 F. App'x. at 406 ("[R]eliance on
counsel's advice is not an affirmative

14

defense.... Rather, '[i]t is simply a means of
demonstrating good faith and represents possible evidence of
an absence of any intent to defraud.'") (second
alteration in original) (quoting Peterson, 101 F.3d
at 381). (Hoover's reference to a mens rea of
scienter, as opposed to willfulness, does not change the
outcome here because our decision rests on the fact that
"willfully" applies to every element of the
offense, not on any distinction between willfulness and
scienter.)

         ¶29
This conclusion comports with our decision in Riley,
708 P.2d at 1364-65. There, we determined that the trial
court had erred in instructing the jury that good faith is
not a defense to securities fraud. Id. We explained
that such an instruction was improper because it created a
substantial risk that a jury would convict a defendant under
the precursor to subsection 11-51-501(1)(b) "even if the
defendant made false or misleading statements in the good
faith belief that they were true." Id. at 1365.
The instruction created a similar risk of conviction under
the precursor to subsection 11-51-501(1)(c), "even if
the defendant in good faith believed the practice or course
of business was not fraudulent or deceitful."
Id. Thus, we explained that to convict a defendant
under the precursor to subsection 11-51-501(1)(b), the
prosecution was required to prove, beyond a reasonable doubt,
that the defendant "was aware that he was
making an untrue statement of material fact or was
aware that he omitted to state a material fact
necessary to make the statement not misleading in light of
the circumstances under which it was

15

made." Id. And we explained that to convict a
defendant under the precursor to subsection 11-51-501(1)(c),
the prosecution was required to prove, beyond a reasonable
doubt, that the defendant "was aware that he
was engaging in an act or practice that would operate as a
fraud or deceit upon any person." Id.

         ¶30
Longstanding precedent from divisions of our court of appeals
is in accord. See Hoover, 165 P.3d at 792; see
also Terranova, 563 P.2d at 366 ("[A]dvice of
counsel is relevant to the fraudulent practices charge (Count
3), and Terranova should be entitled to show, if he can, that
he sold the securities based upon his good faith reliance on
such advice that he could do so legally.").

         ¶31
And our conclusion comports with federal courts'
interpretation of the federal securities law analogues to our
state securities laws. See, e.g., 17 C.F.R. §
240.10b-5 (2025). This is pertinent here because the CSA
states that its provisions "shall be coordinated"
with the federal acts, statutes, and regulations to which
Colorado securities laws refer, to the extent coordination is
consistent with the purposes and provisions of those Colorado
laws. § 11-51-101(3), C.R.S. (2024); see also Cagle
v. Mathers Fam. Tr., 2013 CO 7, ¶ 19, 295 P.3d 460,
467 (noting that federal authorities are "highly
persuasive" when the language of the federal enactments
parallels that of Colorado state securities laws) (quoting
Lowery v. Ford Hill Inv. Co., 556 P.2d 1201, 1204
(Colo. 1976)).

16

         ¶32
Here, 17 C.F.R. § 240.10b-5 and section 11-51-501(1) are
nearly identical. Accordingly, we may look to federal
precedent, and federal courts have consistently held that the
advice of counsel is relevant to the issue of mens rea in
securities fraud prosecutions. See, e.g., United
States v. Bush, 626 F.3d 527, 540 (9th Cir. 2010);
Howard, 376 F.3d at 1147; Peterson, 101
F.3d at 381. For these reasons as well, we conclude that
Schnorenberg's testimony concerning the advice of his
counsel was relevant and, therefore, the district court erred
in excluding it.

         ¶33
We are not persuaded otherwise by the People's assertion
that this conclusion is contrary to our decision in
Blair, 579 P.2d at 1138-40. In Blair, 579
P.2d at 1138-39, we concluded that "specific
intent" is not required to prove securities fraud under
Colorado law, to the extent that "specific intent"
would require a defendant to have purposely intended to
violate the law. We hastened to add, however, that in this
context, the use of the term "specific intent"
confuses matters. Id. at 1139. We therefore
disapproved of the use of that term, making clear that, as
pertinent here, the mens rea should be phrased in terms of
"willfully" or "knowingly." Id.

         ¶34
Nowhere in Blair did we say that
"willfully" applies only to the act of making a
false statement or omission and not to the materiality
requirement. And although we said that good faith was not a
proper defense in that case, we made that statement in the
context of rejecting a defense-tendered jury instruction that

17

would have provided that good faith was an absolute
defense to securities fraud. Id. As noted above,
although good faith reliance on the advice of counsel is not
an absolute defense, it may be relevant to the issue of the
defendant's mens rea.

         ¶35
For several reasons, we likewise are unpersuaded by the
People's contention that we should not follow federal
case law because the mens rea requirement under federal law
is "scienter," which, according to the People,
means "intent to deceive, manipulate or defraud,"
rather than "willfully."

         ¶36
First, notwithstanding the People's suggestion to the
contrary, federal courts have not uniformly interpreted the
term "scienter." Compare Ernst &Ernst v.
Hochfelder, 425 U.S. 185, 193 n.12 (1976) (defining
scienter as "a mental state embracing intent to deceive,
manipulate, or defraud"), with Rehaif v. United
States, 588 U.S. 225, 229 (2019) (defining scienter as
requiring "the degree of knowledge sufficient to
'mak[e] a person legally responsible for the consequences
of his or her act or omission'") (alteration in
original) (quoting Scienter, Black's Law
Dictionary (10th ed. 2014)).

         ¶37
Second, whether or not federal law and Colorado law require a
different mens rea for securities fraud is immaterial
because, as we have explained, the principal reason that
evidence regarding the advice of counsel is relevant here is
the fact that, under Colorado law, "willfully"
applies to every element of subsections 11-51-501(1)(b) and
(c), including the element of materiality.

18

         ¶38
Finally, we are unpersuaded by the People's contention
that our conclusion would recognize a mistake of law defense
to securities fraud, notwithstanding the fact that a mistake
of law defense is recognized only in limited circumstances.
See § 18-1-504(2), C.R.S. (2024). Essentially,
the People argue that our conclusion would shield a defendant
whose attorney told him that his actions were legal. This is
incorrect. A mistake of law generally refers to "[a]
sincere but mistaken belief as to whether particular conduct
constitutes an offense." People v. Bossert, 722
P.2d 998, 1008 (Colo. 1986). Here, it is immaterial whether
Schnorenberg believed that his conduct was lawful; the
question is whether he knew that any false statements or
omitted information was material. Accordingly,
notwithstanding the People's assertion to the contrary,
our conclusion in this case does not recognize a mistake of
law defense.

         C.
CRE 403

         ¶39
The People next contend that the trial court excluded
Schnorenberg's testimony "due to several concerns
that fall under the umbrella of CRE 403" and that we
should reverse the division's decision on CRE 403
grounds. We again disagree.

         ¶40
As an initial matter, we question whether the trial court, in
fact, relied on CRE 403 in excluding Schnorenberg's
testimony. As noted above, the trial court explicitly ruled
on hearsay grounds, which the People now concede was error.

19

         ¶41
Even had the trial court ruled on CRE 403 grounds, however,
we are not persuaded that the division erred in refusing to
affirm the trial court on that basis.

         ¶42
CRE 403 provides, "Although relevant, evidence may be
excluded if its probative value is substantially outweighed
by the danger of unfair prejudice, confusion of the issues,
or misleading the jury, or by considerations of undue delay,
waste of time, or needless presentation of cumulative
evidence." CRE 403 "strongly favors the admission
of relevant evidence." People v. Greenlee, 200
P.3d 363, 367 (Colo. 2009). Accordingly, a reviewing court
must afford the evidence its maximum probative value and
minimum prejudicial effect. Id.

         ¶43
Applying this standard here, the evidence concerning what
Schnorenberg's securities attorney had informed him
regarding the materiality of the allegedly omitted
information or his course of business could have been highly
probative as to whether Schnorenberg had the requisite mental
state under subsections 11-51-501(1)(b) or (c). This
testimony went to the heart of his defense at trial.

         ¶44
In contrast, we cannot say that the probative value of this
evidence was substantially outweighed by the danger of unfair
prejudice.

         ¶45
The People contend that the risk of unfair prejudice was
substantial because (1) Schnorenberg's counsel was not
available to be cross-examined; (2) had the evidence been
admitted, the jurors might erroneously have accepted
Schnorenberg's testimony as to what his counsel had
advised him for the truth of

20

the matter asserted; and (3) admitting this testimony would
have allowed Schnorenberg to use the attorney-client
privilege as both a sword and a shield.

         ¶46
We are unwilling to lay sole blame on Schnorenberg for his
securities counsel's unavailability when the People
objected to a continuance that would have allowed securities
counsel to appear and the trial court denied
Schnorenberg's request for a continuance.

         ¶47
Regardless, any possible prejudice from Schnorenberg's
testimony or his counsel's unavailability could have been
mitigated through the use of a limiting instruction informing
the jurors that they may not consider the testimony for the
truth of the matter asserted. See, e.g.,
Williams v. People, 724 P.2d 1279, 1284 (Colo. 1986)
(approving a limiting instruction advising the jury that some
of the evidence that it had heard could be considered only
for a limited purpose); People v. Smalley, 2015 COA
140, ¶ 30, 369 P.3d 737, 744 (concluding that a limiting
instruction provided by the trial court had adequately
communicated to the jury the limited nonhearsay purpose for
which the jury could consider the statements at issue). And
cross-examination of Schnorenberg likewise could have
mitigated possible prejudice. See Kelly v.
Haralampopoulos by Haralampopoulos, 2014 CO 46, ¶
48, 327 P.3d 255, 268 (concluding that the trial court could
reasonably have determined that cross-examination and
argument would have addressed any issues of prejudice);
see also United States v. Scully, 877 F.3d 464, 475
(2d Cir. 2017)

21

(concluding that the defendant's testimony regarding the
advice of counsel was improperly excluded under Fed.R.Evid.
403, based on the prosecution's assertion that it would
have been prejudiced by the fact that counsel was not
present, in part because the prosecution could have
cross-examined the defendant).

         ¶48
Finally, regarding the People's concern that admitting
this testimony would have allowed Schnorenberg to use the
attorney-client privilege as both a sword and a shield, we
disagree. By testifying as to what his counsel had advised
him, Schnorenberg would necessarily have waived his
attorney-client privilege. People v. Trujillo, 144
P.3d 539, 543 (Colo. 2006). Accordingly, the People would
have been able to cross-examine Schnorenberg regarding what
his counsel had told him, and Schnorenberg would not have
been able to hide behind the privilege. ¶49 For these
reasons, we conclude that even were the CRE 403 issue
properly preserved, that rule does not require reversal here.

         D.
Harmlessness

         ¶50
Having thus determined that the trial court erred in
excluding Schnorenberg's proffered testimony regarding
the advice of his counsel, the question becomes whether the
error was harmless. The People contend that it was because
the division applied the incorrect standard of review and the
evidence of Schnorenberg's guilt was overwhelming. We are
not persuaded.

22

         ¶51
As an initial matter, we note that the parties disagree as to
whether our review implicates the constitutional or
nonconstitutional harmless error standards. Schnorenberg
contends that the issue presented concerns his right to
present a defense and, therefore, we must apply the
constitutional harmless error standard. The People, in
contrast, assert that the nonconstitutional harmless error
standard should apply because, notwithstanding the trial
court's exclusion of Schnorenberg's testimony as to
the specific advice of his counsel, he was able to put on a
defense and meaningfully test the People's evidence. We
need not resolve this dispute because we conclude that the
above-described errors require reversal even under the
nonconstitutional harmless error standard advanced by the
People.

         ¶52
Preserved nonconstitutional errors require reversal if there
is a reasonable probability that the error contributed to the
defendant's conviction. People v. Monroe, 2020
CO 67, ¶ 17, 468 P.3d 1273, 1276. When the alleged error
is of a constitutional dimension, however, reversal is
required unless the reviewing court can say that the error
was harmless beyond a reasonable doubt. Hagos v.
People, 2012 CO 63, ¶ 11, 288 P.3d 116, 119
("In other words, we reverse if 'there is a
reasonable possibility that the [error] might have
contributed to the conviction.'") (alteration in
original) (quoting Chapman v. California, 386 U.S.
18, 24 (1967)).

23

         ¶53
Here, assuming without deciding that the nonconstitutional
harmless error standard applies as the People contend, we
conclude that there is a reasonable probability that the
error contributed to Schnorenberg's convictions.

         ¶54
As noted above, Schnorenberg's primary defense at trial
was that he did not disclose certain information to investors
because his securities attorney had advised him that he did
not need to do so, and thus he lacked the requisite mens rea.
Due to the trial court's evidentiary rulings, however,
Schnorenberg was unable to testify as to what his lawyer had
actually advised him, which limited his ability to argue that
he lacked the required mental state. Because this evidence
was central to Schnorenberg's defense, we conclude that
there is a reasonable probability that the exclusion of this
testimony contributed to Schnorenberg's convictions and
that, therefore, the trial court's error in excluding
such evidence was not harmless.

         ¶55
We are not persuaded by the People's arguments to the
contrary. The People quote extensively from
Schnorenberg's testimony and contend that he was able to
tell his side of the story. The testimony that the People
cite, however, reveals that Schnorenberg was able to testify
only in general terms about seeking advice from counsel. He
was not permitted to testify regarding what his lawyer had
actually told him.

24

         ¶56
Likewise, although the People cite federal standards as to
when a defendant is entitled to an instruction on an
advice-of-counsel defense, these standards have no bearing on
the question of whether the advice that Schnorenberg had
received was relevant and potentially exculpatory.

         ¶57
And notwithstanding the People's extensive recitation of
the allegations of Schnorenberg's wrongdoing in order to
show that the evidence of guilt was overwhelming, the fact
remains that in excluding relevant, potentially exculpatory
testimony that went to a central element of the offense (and
the premise of Schnorenberg's defense), there is a
reasonable probability that the trial court's error
contributed to Schnorenberg's convictions.

         ¶58
Accordingly, we conclude that the trial court's error in
excluding the evidence of the advice of counsel was not
harmless and that the division below therefore correctly
reversed Schnorenberg's convictions.

         E.
Jury Instruction

         ¶59
Finally, the People contend that the division below erred in
concluding that the trial court had erroneously refused to
give Schnorenberg's proposed jury instruction that good
faith reliance on the advice of counsel is relevant to
whether he had acted willfully. Schnorenberg, ¶
36, 541 P.3d at 9. Although we need not address this issue in
order to decide whether Schnorenberg is entitled to a new

25

trial, because this issue is likely to recur on remand, we
briefly address it to provide guidance for the trial court
and the parties.

         ¶60
Jury instructions must correctly inform the jury of the law.
Day, 255 P.3d at 1067. "A jury instruction
should substantially track the language of the statute
describing the crime ...." People v. Weinreich,
119 P.3d 1073, 1076 (Colo. 2005). As long as the instruction
correctly informs the jury of the law, the trial court has
"broad discretion to determine the form and style of
jury instructions." Day, 255 P.3d at 1067.

         ¶61
Here, the trial court's jury instructions explained:

A person acts "knowingly" or "willfully"
with respect to conduct or to a circumstance described by a
statute defining an offense when he is aware that his conduct
is of such nature or that such a circumstance exists. A
person acts "knowingly" or "willfully",
with respect to a result of his conduct, when he is aware
that his conduct is practically certain to cause the result.

         This
language tracked the statutory definition of
"willfully" in section 18-1-501(6).

         ¶62
The trial court's instructions further enumerated the
elements of securities fraud under section 11-51-501(1)(b):

1. That the defendant,

2. in the State of Colorado, at or about the date and place
charged,

3. in connection with the offer or sale of any security,

4. directly or indirectly,

5. willfully

26

6. (a) made an untrue statement of material fact, or

(b) omitted to state a material fact necessary in order to
make the statements made, in the light of the circumstances
under which they were made, not misleading.

         ¶63
And the instructions set forth the elements of securities
fraud under section 11-51-501(1)(c):

1. That the defendant,

2. in the State of Colorado, at or about the date and place
charged,

3. in connection with the offer or sale of any security,

4. directly or indirectly,

5. willfully

6. engaged in any act, practice or course of business which
operated or would operate as a fraud or deceit upon any
person.

         ¶64
The foregoing elemental instructions also properly tracked
the language of the statute. And when, as here, the mens rea
is offset from other elements of the offense in a jury
instruction, the mens rea modifies all succeeding conduct
elements. People v. Rodriguez, 914 P.2d 230, 272
(Colo. 1996).

         ¶65
Accordingly, we conclude that the foregoing instructions
properly advised the jury of the applicable law.

         ¶66
The question remains whether Schnorenberg is entitled to an
additional instruction that, in determining whether he had
acted willfully, the jury may

27

consider the evidence as it relates to his good faith
reliance on the advice of counsel.

         ¶67
In Blair, 579 P.2d at 1139, we rejected a jury
instruction that advised the jurors that good faith was an
absolute defense to a securities fraud violation.

         ¶68
In Riley, 708 P.2d at 1364-65, in contrast, we
concluded that a jury instruction providing that good faith
was not a defense was also impermissible. This was
because such an instruction created a substantial risk that a
jury would convict a defendant who had made false or
misleading statements in the good faith belief that they were
true or who in good faith believed that the defendant's
practice or course of business was not fraudulent or
deceitful. Id. at 1365.

         ¶69
Taken together, these cases bar a trial court from
instructing the jury that good faith is either an absolute
defense or not a defense at all. Thus, Colorado case law
neither requires nor prohibits Schnorenberg's particular
requested instruction, and the decision as to whether to
provide such an instruction rests within the trial
court's sound discretion.

         III.
Conclusion

         ¶70
For these reasons, we conclude that the trial court
reversibly erred in excluding Schnorenberg's testimony
about the advice of his securities counsel. Accordingly, we
affirm the judgment of the division below and remand this
case for a new trial on the counts at issue.